OPINION OF THE COURT
Victor I. Barron, J.
In this action, plaintiffs Jackson (purchasers) sue to recover from defendants Cobert (sellers) a down payment under a canceled contract for sale of real property. The Jacksons allege that because they were unable to obtain a mortgage commitment, the contract entitles them to a return of the deposit, and the Coberts allege that the Jacksons’ failure to comply with the terms of the contract precludes them from canceling such and recovering the deposit.
The credible evidence elicited at trial reveals the following:
On or about July 1, 1991, the parties entered into a contract for the sale of the subject premises, 1830 Marine Parkway, Brooklyn, New York, for the sum of $257,000. Upon execution of the agreement, the Jacksons delivered to the Coberts’ attorney, Milton Cobert, as escrowee, a check in the amount of $15,000 representing the down payment. Milton Cobert, Esq., is now deceased.
The contract contained the standard mortgage contingency clause Of 25), wherein the purchasers were afforded a period of 45 days to obtain a mortgage commitment in the amount of $205,000 for a period of 25/30 years, at the prevailing rate of interest. In the event that the Jacksons were unable to obtain a loan commitment within the prescribed time, or any extensions thereof, the Jacksons could cancel the contract and recover the deposit. This right, however, was predicated upon purchasers sending "notice of such inability * * * in writing, to sellers’ attorney [|f 32].” Further, "at the end of such period, and any extensions thereof, should no notice have been received by sellers’ attorney of inability to obtain a commitment, the agreement shall be deemed to be firm, and closing shall proceed * * * at the date and time fixed for closing” (If 25). Closing was scheduled for "Dec. 3, 1991 or sooner by agreement”.
On or about August 9, 1991, the Jacksons received a statement from Atlantic Home Mortgage Corp. indicating that a commitment would be subject to the sale of the Jacksons’ existing home.
It is evident that Milton Cobert and Arthur Susnow, attor *35 ney for the Jacksons, maintained a dialogue throughout the course of this transaction, and Cobert was kept informed of the Jacksons’ progress in selling their home. Pursuant to letters dated September 4, and September 20, 1991, Milton Cobert extended Jacksons’ time to obtain a mortgage commitment to September 14, and then again to September 30, 1991, respectively, in order to give the Jacksons further opportunity to sell their home, after several "deals” fell through.
There were conversations between the two attorneys subsequent to Cobert’s letter of September 20, 1991, and Susnow faxed a contract to potential buyers on September 26, 1991.
By telephone on October 10, 1991, and then by letter on October 11, 1991, Susnow advised Cobert that the "deal” to sell the Jacksons’ home had fallen through and, therefore, the Jacksons would be unable to obtain a firm mortgage commitment. A demand was made for the return of their down payment.
By letter dated October 16, 1991, Milton Cobert advised Arthur Susnow that the contract was deemed breached by the Jacksons for failure to comply with the mortgage contingency clause as there was no written extension of time within which the Jacksons could obtain a mortgage beyond September 30, 1991. Further, the down payment was being retained as liquidated damages.
It is the Jacksons’ contention that at the end of September 1991, after conversations with Arthur Susnow, Esq., that Milton Cobert orally extended the time "a few more days” to obtain a mortgage commitment in order to allow the Jacksons a further opportunity to enter into a contract to sell their home. In reliance thereof, on September 26, 1991 Arthur Susnow faxed a contract to sell the Jacksons’ home to the attorney for prospective buyers.
The Coberts contend that no written extension beyond September 30, 1991 was given and, therefore, the Jacksons’ deposit was forfeited upon their failure to cancel the contract by that date.
In the instant action, the contract clearly provided that for the Jacksons to avoid waiver of the mortgage contingency, they were obligated to notify the Coberts in writing of their failure to obtain financing within the 45 days or any extension thereof.
A contract that contains a provision that it cannot be changed orally, cannot be changed, discharged or terminated *36 by an oral executory agreement or oral notice. (General Obligations Law § 15-301.) However, oral "changes” in executory contracts have been interpreted to relate to actual changes of terms as opposed to waivers of a condition that has the sole effect of keeping the contract viable to the mutual benefit of both parties. (Jiffy Sew Corp. v Paar, 29 AD2d 643; Chemical Bank v Wasserman, 45 AD2d 703; Young v Bohling, 202 NYS2d 826; Loper v O’Rourke, 86 Misc 2d 441.) "The statute [General Obligations Law § 15-301] contemplates modification of an executory term of performance (see Rose v Spa Realty Assoc., 42 NY2d 338); it is not concerned with an oral waiver of a condition subsequent, such as a contingency date in a contract for the sale of real property (see Loper v O’Rourke, 86 Misc 2d 441).” (Avendanio v Marcantonio, 75 AD2d 796, 797 [2d Dept 1980].) Such a change, in effect, creates a new contract and may be evidenced by the conduct of the parties. (See, Loper v O’Rourke, at 442.)
Here, the contract clearly provides that, for the Jacksons to avoid waiver of the mortgage contingency, they were obligated to notify the Coberts in writing of their failure to obtain financing within the 45 days or any extension thereof.
As a result of the continuing dialogue between the attorneys regarding the progress of the sale of the Jacksons’ home, extensions of time to obtain a mortgage commitment were given, as confirmed by Cobert’s letters dated September 4 and 20. There were conversations with attorney Cobert through the end of September, subsequent to Cobert’s letter of September 20, wherein he was advised that the Jacksons had a potential buyer for their home, and that a contract of sale had been faxed to the buyer’s attorney and a few more days were needed to see if this contract would go through.
No written confirmation of extension was sent to Susnow, but based on Cobert’s acquiescence, and in reliance upon Cobert’s assent to give the Jacksons "a few more days”, Susnow did not cancel the contract by September 30. However, when it became apparent a few days later that contract of sale for the Jacksons’ house was not signed, he notified Cobert orally, on October 10, at which time Cobert refused to extend the time any longer, whereupon Susnow sent him a letter canceling the contract and demanding the return of the down payment.
Based upon the conduct of the parties’ attorneys, new agreements were created extending the time within which the *37 Jacksons could cancel the contract, the last of which was an oral extension giving the Jacksons "a few more days” into October 1991. (See, Loper v O’Rourke, supra.)
In this case, there was no alteration of contract terms, the only change at issue is the mutual agreement to keep the contract viable by extending the date by which purchasers could obtain a firm mortgage commitment or cancel the contract.
The court finds that there was an oral modification extending the time within which the plaintiffs could obtain a firm commitment or cancel the contract. The plaintiffs timely exercised their right to cancel the contract in accordance with the contract terms and the oral extension of the mortgage contingency clause.
Accordingly, this court finds that the plaintiffs are entitled to the return of their down payment and awards judgment to the plaintiffs in the sum of $15,000 together with interest from November 15, 1991.
Defendants’ motion to dismiss is denied.